# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) |
| -vs- | ) No. CR-08-261-M |
| **SERGIO ANTONIO AGUILAR-RODRIGUEZ,** | ) |
| Defendant. | ) |

## ORDER

Before the Court is defendant's Motion to Suppress ("Motion") filed on January 2, 2009. On January 12, 2009 the government filed its Response in opposition. On January 23, 2009 the court conducted an evidentiary hearing on the Motion. Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.[1]

## Procedural Background

The defendant was arrested by Complaint on September 17, 2008 for federal charges of being an illegal alien in possession of firearms that traveled in interstate commerce in violation of 18 U.S.C. § 922(g)(5)(A). Formal federal charges were brought immediately following the search that took place at his place of residence, 4217 Farm Road in Moore, Oklahoma ("the property"), on September 16, 2008. This search is the subject of the Motion to Suppress.

On October 8, 2008, a federal grand jury returned a two-count Indictment against the defendant for: 1) being an alien illegally and unlawfully in the United States who

---

[1] At the hearing Agent Dennis Garza ("Garza") of the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBN"), Agent Scott Turner ("Turner") of the Oklahoma Department of Human Services - Office of Inspector General, and Agent Andrew Farabow ("Farabow"), of the Federal Bureau of Investigation ("FBI"), testified on behalf of the government. Anita Aguilar - Rodriguez and Jane Doe, a minor, testified on behalf of the defendant.

knowingly possessed firearms and ammunition, which were in and affecting interstate and foreign commerce in violation of 18 U.S.C. § 922(g)(5)(A), and 2) being an alien who was previously removed from the United States, and was found to be knowingly in the United States illegally, without the consent of proper federal authorities in violation of 18 U.S.C. §1326(a). On December 2, 2008, the grand jury returned a three-count Superseding Indictment against the defendant adding an additional third charge of illegal possession of a silencer in violation of 26 U.S.C. § 5861(d).

## Factual Background[2]

OBN Agent Dennis Garza testified that he was the case agent in a continuing investigation involving the source of income and suspected drug trafficking involving the defendant, Sergio Antonio Aguilar - Rodriguez ("defendant" or "Aguilar - Rodriguez"). He indicated that a variety of facts including information obtained from wiretaps, the defendant's illegal status, his prior criminal history, execution of numerous loans totaling some $ 300,000.00, interviews of witnesses that payments were being made on the loans in small denominations of cash, the lack of reported income for himself and his wife Anita Aguilar - Rodriguez, his involvement with an extortion/counterfeiting scheme, as well as prior drug trafficking activity, among others, had prompted that agency to initiate an investigation into the activities of the defendant.

Agent Garza repeatedly conducted surveillance in an attempt to determine whether Aguilar - Rodriguez was residing at a residential home identified as 4712 Farm Road in Moore, Cleveland County, Oklahoma. The location of the property is in a gated community with limited access and is at the end of a cul-de-sac which made surveillance by law enforcement difficult without being detected. Agent Garza surveilled the property on at least ten prior occasions, but did not see the defendant there during those instances. On September

---

[2] This factual background is based upon the evidence presented at the hearing.

9, 2008, Agent Garza and OBN Agent Miguel Qrquiz were again engaging in surveillance outside of the property and on that day, they observed the defendant enter the property. Because the defendant was sighted entering the property on September 9, 2008, Agent Garza finalized an affidavit for the purpose of obtaining a search warrant for the property because he had reason to believe that with such recent activity, and the appearance of the defendant there, there were documents and other evidence present at that location relevant to the investigation.

On September 11, 2008, Agent Garza finalized the drafting of an 8- page affidavit and a search warrant for the property at 4217 Farm Road, Moore, Oklahoma which had documents described as "attachment A" which was a photograph of the property, and "attachment B" which was a list of specific items of evidence attached to it. The affidavit provided detailed information concerning the defendant's illegal status, prior criminal history, execution of numerous loans, descriptions of payments made on loans in cash, the lack of reported income for himself and his wife, false statements made by his wife concerning the family financial status, his involvement with a extortion and counterfeiting scheme that resulted in him making threats to kill a confidential source, prior drug trafficking activity, and recent surveillance at the property, among other detailed facts.

On or about the same day, an attorney with OBN, Susan Rogers, obtained and reviewed the warrant affidavit which was emailed to her by OBN Agent Miguel Orquiz at the direction of Agent Garza. Subsequent to that review, Agent Garza traveled to Cleveland County Courthouse in Norman, Oklahoma and presented the above documents to State District Judge Tom Lucas for consideration. Judge Lucas has been admitted to practice since 1964 and has presided as a State Court judge for a considerable period of time. On September 11, 2008, Judge Lucas considered the search warrant, reviewed attachments "A" and "B" and the supporting affidavit, and made a determination that probable cause was found to authorize the search of the property by signing the search warrant.

Agent Garza, as affiant for the search warrant affidavit, stated in his conclusion, "(b)ased on the foregoing I respectfully request that the Magistrate Judge find that probable cause exists to issue a search warrant to search and seize the mentioned property at this location which constitutes evidence, fruits and instrumentality's of violations of State criminal law." (sic). The warrant on its face referenced "attachment B" and "attachment B" described nine specific categories and descriptions of items that were authorized to be seized under the warrant, "evidencing the business of Narcotics trafficking and laundering profits from this enterprise."

On or about September 12, 2008, Agent Garza met with various other law enforcement agents and officers at OBN offices regarding the search warrant where a plan was developed for its execution. Because of the need to coordinate a significant number of law enforcement officers, in the early morning hours of September 16, 2008, Agent Garza met with all of the officers involved in the execution of the warrant. Agent Garza briefed the agents on September 16, 2008 at about 5:00 a.m. at a military hanger, and distributed copies of a plan for execution of the warrant which included a number of items, including photographs of the defendant and his wife, a description of the property, and "attachment B" - the listing of the items subject to the search which was part of the warrant authorized by the judge. The agents who attended the briefing were the actual agents that performed the search of the property. A photograph of the actual briefing as it was taking place was taken by a public information officer which shows agents reviewing the documents described above. Agent Garza indicated that from prior training by a former federal agent that he knew, it was important to brief the officers as to the items that would be subject to the search so that they knew what items they were authorized to obtain under a warrant.

At approximately 6:00 a.m. on September 16, 2008, Agent Garza, along with Agents Jesse Diaz, Jorge Morales, Mitch Smith, Brian Hess, Miguel Orquiz, Jeanna

Mooneyham, Troy Wall, Brian Williams, Patty Figurera, and Larry Morgan of OBN, Agent Andrew Farabow of the Federal Bureau of Investigation, Norman Police Officer Jeff Puckett, Agent Gregory Rupert of the Department of Homeland Security - Immigrations and Custom Enforcement, and Agents Scott Turner and Don Mabry of the Oklahoma Department of Human Services - Office of Inspector General executed the search warrant at the property at 4217 Farm Road in Moore, Oklahoma. After no response to a knock at the front door was received, the agents breached the front door and entered the property.

The defendant was located in the vicinity of the master bedroom along with his wife, Anita Aguilar - Rodriguez, and a minor child. Two other minor children were located in other areas of the house. The defendant was handcuffed and moved to the dining room where he was seated at a table. Aguilar - Rodriguez was able to speak both English and Spanish and Agent Garza was bi-lingual. At approximately 6:10 a.m. on September 16, 2008, OBN Agent Jesse Diaz read Aguilar - Rodriguez his Miranda rights. He elected to think about whether he would speak with the OBN Agent Diaz and continued to remain seated at the table. During this time, officers were conducting a search of the property, and located various items of evidence, including ammunition and two handguns.

While searching in the master bedroom, where the defendant was initially located when entry to the property was made, FBI Agent Farabow found a High Standard .22 pistol with an attached silencer, containing 10 rounds of ammunition, on top of a cabinet in the bathroom attached to the master bedroom. Agent Farabow also located ammunition, including a 22 caliber bullet and a box of Winchester ammunition in drawers of a chest in the master bedroom. In addition, Agent Farabow found a Jennings Model J-22 handgun, disassembled in two separate men's boots in the master bedroom. The barrel and receiver for this gun were found by Norman Police Officer Jeff Puckett in the master bedroom closet in a black bag.

After the handgun with the attached silencer was found, the defendant saw

5

officers with it and spontaneously stated outloud to agents that he "made" it for his own protection, as detailed in Agent Diaz's report. This occurred after Aguilar - Rodriguez was Mirandized while he was still trying to decide whether to talk to OBN agents. Thereafter, at 7:09 a.m., the defendant decided to refuse to waive his Miranda rights. Aguilar - Rodriguez did agreed to speak with Scott Turner of the Department of Human Services regarding an investigation he was conducting concerning welfare fraud. Turner was unaware that Aguilar - Rodriguez had previously refused to talk to OBN agents at 7:09 a.m. Turner had first talked to Anita Aguilar - Rodriguez at about 9:15 a.m. The defendant was Mirandized by Turner and he agreed to provide a statement at about 9:35 a.m. Following his interview by Agent Turner, Aguilar - Rodriguez requested that OBN Agent Garza advise OBN Agent Diaz that he had changed his mind and was now willing to talk to him. Agent Diaz provided Aguilar - Rodriguez with another rights waiver form that he executed after Agent Diaz confirmed that the defendant wanted to speak and recanted his earlier refusal to speak. Aguilar - Rodriguez executed this waiver at 11:12 a.m., after which the defendant provided a statement, signed disclaimers of ownership in various items of property, and gave consent to search a property at 900 N. Flood Avenue, Norman, Oklahoma. Anita Aguilar-Rodriguez previously agreed to provide a statement to OBN agents after waiving her Miranda rights at 6:30 a.m.

Agent Garza stated that at the conclusion of the search he left a copy of the warrant at the property along with an itemized list of the items seized, but was unsure whether he had left "attachment A" or "attachment B" to the warrant. Anita Aguilar-Rodriguez, who testified on behalf of the defense, also confirmed that a copy of the warrant and an itemized list of items seized was left at the property by law enforcement. Agent Garza made a return of the warrant to the Cleveland County District Court on or about September 22, 2008. The official records of Cleveland County District Court show that the Warrant, attachment "A", attachment "B," the supporting affidavit, and a court minute sealing the documents are on file.

Agent Garza also noted that on September 22, 2008 when he appeared before Judge Lucas to make the return on the warrant, the judge corrected the original date of the search warrant's issuance from September 9, 2008 to September 11, 2008 and initialed it. It had been brought to the Judge's attention by Agent Garza that the date on the original warrant was incorrect.

## **Discussion**

The defendant seeks suppression of all of the evidence recovered in the search including the firearms and ammunition found during the search, voluntary statements made by the defendant when he spontaneously said that he "made that" while observing the gun with the silencer and statements made by him and his wife (an uncharged individual) after clear and specific written Miranda waivers had been made. As set forth herein, based upon the facts presented at a hearing on the Defendant's Motion to Suppress, the court concludes that there was no Fourth Amendment violation and the evidence recovered in connection with the search that took place at 4217 Farm Road, Moore, Oklahoma should not be suppressed.

First, it appears that the defendant is seeking suppression of evidence not only with respect to the federal criminal law matters at issue before this Court, namely the firearms and ammunition that were recovered under the search, but also with respect to statements and evidence collected related to state law violations involving possible welfare fraud and forfeiture of property under state law, which are not issues being tried before this Court. Accordingly, since those state law legal issues are not before the Court in this case, nor will they be considered in the pending trial on the gun and illegal alien charges, the Court should not and will not address the question of whether those statements and evidence should be suppressed in these proceedings, and any such relief sought by the defendant is hereby denied.

At the outset, the court notes that the defendant carries the burden of demonstrating that the judge who authorized the search of the defendant's place of residence was illegal. *United States v. Carhee,* 27 F.3d 1493, 1496 (10th Cir. 1994). Notwithstanding

the arguments and evidence presented, the court has determined that the defendant has failed to sustain his burden to show that the extreme sanction of suppression of all the evidence is warranted under the facts of this case. The search warrant documents and supporting affidavit contained sufficient facts to establish probable cause to search the property at 4217 Farm Road, Moore, Oklahoma where the defendant resided. The Court further concludes that under the *Leon* good faith exception, the evidence seized should not be suppressed because here the officers "acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Danhauer,* 229 F.3d 1002, 1006 (10th Cir. 2000); *United States v. Rauch*, 282 Fed. Appx. 730, 731 (10th Cir. 2008).

The Fourth Amendment requires that search warrants "particularly describ[e] . . . the persons or things to be seized." United States Constitution Amend. IV. The test applied to this requirement of particularity is whether the description allows the searcher to "reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982). In *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988), the search warrant was found to be facially over broad because it authorized a non-specific broad-based general search of evidence regarding "the purchase, sale and illegal exportation of materials in violation" of the Federal export laws. The *Leary* warrant provided no meaningful limitation on the search which ultimately included virtually every document "one might expect to find in a modern export Company's office," *Leary*, 846 F.2d at 602. The *Leary* warrant is in direct contrast with the warrant at issue in this case, which referenced a specific list of items that law enforcement sought, as was set forth in "attachment B."

Absolute technical precision is not the standard for interpreting a search warrant. *United States v. Ortega-Jimenez,* 232 F. 3d 1325, 1328 (10th Cir. 2000). Rather, when interpreting a warrant, this court looks to the practical meaning of the warrant's terms. As the *Ortega* court stated, "when interpreting warrants this court has adopted a standard of practical

accuracy rather than technical precision." *United States v. Ortega-Jimenez,* 232 F. 3d at 1328; *United States v. Simpson*, 152 F. 3d 1241, 1248 (10th Cir. 1998); *United States v. Hutchings*, 127 F.3d 1255 (10th Cir. 1997). While the wording of the face of the warrant could have been more detailed, it is evident that the practical meaning of the warrant was to search for those items listed in "attachment B." The Court finds that the face of this warrant at issue did specifically refer to "attachment B," and it was evident to all concerned that the warrant granted authorization to search for those specific items. Moreover, the Court finds that even when there is a technical violation in a warrant, "the exclusion of evidence must not be a sanction which is disproportionate to the violation." *United States v. Tylman,* 245 F.3d 978 (7th Cir. 2001). [3] Here, the relief sought by the defendant, wholesale suppression of all of the evidence recovered after obtaining the search warrant, is an extreme sanction which is unwarranted.

In the *Tylman* case, items of evidence were similarly not individually listed on the face of the warrant, as is common with search warrants from many jurisdictions, including warrants routinely issued by Magistrate Judges of this Court. That court observed, "there is no requirement... that items to be seized must be set out on the face of the warrant as opposed to an attached list." *Tylman*, 245 F.3d at 980. Here, the items subject to seizure can clearly be ascertained by reference to "attachment B." *See United States v. Pritchett*, 40 Fed. Appx. 901, 906-907 (6th Cir. 2002) (unpublished). The relevant inquiry is not how the evidence sought is listed or the format of the warrant itself, but rather, whether "the description in the warrant

---

[3] There is no requirement that the language of the Affidavit be specifically incorporated into the warrant, although it is permissible. There is also no requirement that the supporting affidavit be served on a defendant. Where a technical failure of a ministerial nature occurs, such as the failure to leave a copy of "attachment B" at the property at the conclusion of the search, wholesale suppression is unwarranted, particularly where, as here, there was no evidence of ill will or a deliberate attempt to trample upon the defendant's rights. *See United States v. Simons*, 206 F.3d 392 (4th Cir. 2000) (failure to leave copy of the warrant did not render search unreasonable); *United States v. Hubbard*, 493 F.Supp. 209 (D.D.C. 1979) (failure to properly serve warrant does not invalidate search as it is ministerial function); *United States v. Klapholz*, 17 F.R.D. 18 (D.C.N.Y. 1955), *aff'd* 230 F.2d 494 (2nd Cir. 1956); and *United States v. Gross*, 137 F. Supp. 244 (D.C.N.Y. 1956).

would permit an executing officer to reasonably know what items are to be seized." *United States v. Beaumont*, 972 F. 2d 553, 560 (5th Cir. 1992). Here, the evidence demonstrates that the executing officers, immediately prior to the time the search was executed, were briefed by Agent Garza regarding the subject matter, the scope of the search, and "attachment B" containing the list of items authorized by the judge to be seized was specifically provided to the officers. The search at issue was not an uncontrolled and unfettered "rummaging" search by law enforcement. *United States v. Towne*, 997 F.2d 537, at 550 n.6 (9th Cir. 1993) (citing *United States v. Luk*, 859 F.2d 667, 677 n.10 (9th Cir. 1988)); *United States v. Beaumont*, 972 F.2d 553, 561-62 (5th Cir. 1992); *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990); and *United States v. Curry*, 911 F.2d 72, 76-77 (8th Cir. 1990).

The search warrant issued by Judge Lucas described specific items of evidence and guidelines limiting the search, which avoided the pitfalls of an unconstitutional overly broad warrant, as was the case in *Leary*. Generally, a warrant's description of items to be seized is sufficient if it allows the searcher to reasonably ascertain and identify the things to be seized. *United States v. Finnigin*, 113 F.3d 1182, (10th Cir. 1997). That standard was satisfied in this case.

The Court further finds that the items sought under the warrant at issue were reasonable under the circumstances and the particularized facts of this case. The investigation focused on the source of monies for numerous loans secured by the defendant when it was evident that this defendant was making continual monthly cash payments for such loans, was an illegal alien, had a wife with limited income, had filed tax returns with minimal income, and was involved in April 2008 with an extortion and cash counterfeiting scheme, and that the defendant had made death threats against a confidential source, who was involved in criminal activity and was essentially a "victim" of the defendant's threats. These facts, coupled with the observation that Aguilar - Rodriguez was observed by officers living in a large multi-bedroom

ranch house only days before the warrant was obtained, made the scope of items sought, which included financial documents and evidence of drug trafficking, entirely reasonable.

Other courts which have considered the issue of the scope of a warrant have focused on whether the officers could reasonably determine what items were the subject of the search. "The test applied to the description is a practical one." *United States v. Janus Industries*, 48 F.3d 1548, 1553 (10th Cir. 1995). "'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking.'" *Janus Industries*, 48 F.3d at 1554 (quoting *United States v. Emmons*, 24 F.3d 1210, 1216 (10th Cir. 1994)). The reality is that few people keep evidence of their crime in well-marked organized files. *Emmons*, 24 F.3d at 1216; *United States v. Wicks*, 995 F.2d 964, 974 (10th Cir. 1993). The Tenth Circuit, therefore, has repeatedly held that "[a] warrant describing items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *Emmons*, 24 F.3d at 1216 (quoting *Wicks*, 995 F.2d at 973) ; *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990); *United States v. Leary*, 846 F.2d at 599; *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985); *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985).

In this case, the warrant sufficiently described the varied documents, papers, items and objects that officers were searching for which would constitute evidence of an illegal drug business or other means of making the monthly payments of cash income. This Court concludes that the items to be sought in "attachment B" were not overbroad, particularly since, " (l)aw enforcement agents in this case could not have known the precise documents and records Defendants utilized...." in connection with the defendant's activities. *United States v. Abboud*, 438 F.3d 554, 575 (6th Cir. 2006).

Under the "Good Faith" standard of *United States. v. Leon*, 468 U.S. 897 (1984),

a search warrant is initially presumed to be valid. *See United States v. Cardall*, 773 F.2d 1128 (10th Cir. 1985). "Because the Good Faith inquiry is confined to the objectively ascertainable question whether a reasonable trained officer would have known that the search was illegal despite the magistrate's authorization, the reviewing court must examine the text of the warrant and the affidavit to ascertain whether the agents might have reasonably presume[d] it to be valid." *United States. v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993). "If this court determines that the officers acted in good faith reliance on the search warrant, it does not need to reach the issue of whether probable cause existed for the warrant." *United States v. Price*, 265 F.3d 1097, 1102 (10th Cir. 2001). Here the Court has considered the evidence and concluded that the agents in this case did reasonably presume that the warrant was valid and acted in good faith in its execution. Accordingly, even if there was a lack of probable cause or other technical defect in the language of the warrant or ministerial procedural failure in not leaving "attachment B" at the property, the evidence recovered should not be suppressed.

Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable. "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (internal quotation omitted) (alteration in original). "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007) (quotation omitted) (alteration in original). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Leon,* 468 U.S. at 921.

In *Leon*, the Supreme Court held that "the suppression of evidence obtained pursuant to a warrant should be ordered ... only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918; *see also United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999) ("The purpose of the exclusionary rule is to deter police misconduct."). "Where an officer in good faith obtains a search warrant from a detached and neutral magistrate and the executing officers act within its scope, there is nothing to deter." *Id.*[4] Accordingly, because the officers here acted in good faith, the warrant and the evidence collected should not be suppressed.

In a *Leon* determination of the "reasonableness of an officer's reliance upon a search warrant, this [C]ourt must examine the underlying documents to determine whether they are 'devoid of factual support.'" *United States v. Perrine*, 518 F.3d 1196, 1206 (10th Cir. 2008) (quoting *United States v. McKneely,* 6 F.3d 1447, 1454 (10th Cir. 1993)). *Leon* identified four specific situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable;* and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

The court will address these situations in turn. First, there is no allegation or

---

[4] "This is because '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination .... Once the warrant issues, there is nothing more the policeman can do in seeking to comply with the law.'" (quoting *Leon*, 468 U.S. at 921). As the Tenth Circuit stated in *Rauch* which is equally applicable here, "(i)n such situations, ... 'an officer cannot be expected to question the [issuing] magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient," and thus, "[p]enalizing the officer for the magistrate's error ... cannot logically contribute to the deterrence of Fourth Amendment violations." *United States v. Rauch*, 282 Fed. Appx. at 730 (10th Cir. 2008).

indication that Agent Garza prepared the affidavit with false information or that it contained any false statement which was made by him intentionally or recklessly to mislead Judge Lucas.[5] Second, there is no evidence to suggest that Judge Lucas wholly abandoned his role as a judicial officer in reviewing the supporting documentation and issuing the warrant. Third, the court concludes that given Agent Garza's reliance on a variety of relevant facts, and the affidavit's review by an attorney with OBN, and its proper consideration by the judge, one cannot say that official belief in the validity of the warrant was entirely unreasonable. While the warrant could have been written more precisely, it cannot be said that the warrant and supporting documentation was so facially deficient that a reasonable law enforcement officer could not deem it to be valid. To the contrary, each of the law enforcement officers who testified indicated that they previously had been involved with a variety of search warrants and none indicated that they believed there was a question about the validity of the warrant. The court concludes that adopting an overly technical reading of the warrant to suppress all of the evidence that would result in an unfair and disproportionate sanction.

        The Tenth Circuit has held that "[i]n reviewing suppression motions, courts have

---

[5] While the defendant suggests that the information in the search warrant affidavit from a Confidential Source or "CS" regarding Aguilar - Rodriguez's involvement in possible money laundering is not corroborated and cannot be relied upon, the Tenth Circuit has stated, "... the absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued," *See United States v. Bishop*, 890 F.2d 212, 217 (10th Cir. 1989), particularly when the officer takes steps to investigate the informant's allegation. *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000). In this case, such steps were taken to investigate the information from the CS and, moreover, the majority of the information in the affidavit is based upon investigation, not solely the statement of the CS. In addition, the CS functioned more as a participant turned victim of defendant's death threats against him rather than a "tipster." Furthermore, it is significant to note that the CS in the instant case was **not** a paid informant, which courts have held may require additional corroborating evidence. *United States v. Dunloy*, 584 F.2d 6, (2nd Cir. 1978). Where the affiant was not a paid informant but an admitted participant in the very crime at issue, the government is not required to show his past reliability for issuance of a search warrant since his participation as an accomplice satisfied reliability standard. *United States v. Dunloy*, 584 F.2d at 10.

the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000); *see also Leon*, 468 U.S. at 924-25. This Court finds that the *Leon* "good faith exception" applies here and while that resolves the issue, nonetheless, upon further analysis and review, the Court further concludes that the warrant was supported by probable cause, was properly issued, and compliant with requirements of the Fourth Amendment.

Generally, probable cause exists to support a search warrant when the totality of the circumstances indicates that there is a fair probability of discovering contraband. *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). Evidence that the defendant is in possession of contraband that is of the type that would normally expect to be hidden at their residence will support a search. *United States v. Jenkins,* 901 F.2d 1075, 1080 (11th Cir.1990).

In making these determinations, this Court affords "great deference" to the issuing judge's determination of probable cause. *United States v. Wittgenstein*, 163 F.3d 1164 (10th Cir. 1998); *United States v. Le*, 173 F.3d 1258, 1265 (10th Cir. 1999); *United States v. McCoy,* 781 F.2d 168, 173 n.4 (10th Cir. 1985). [6] The defendant has the burden of establishing that the search warrant was deficient. *United States v. Carhee,* 27 F.3d at 1496. Thus, Judge Lucas is entitled to "draw reasonable inferences from the material provided in the warrant application." *United States v. Tisdale,* 248 F.3d 964, 971 (10th Cir. 2001).

Ultimately, "[t]he test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." *Nolan,* 199 F.3d at 1183 (quoting *Texas v. Brown,* 460 U.S. 730 (1983) (plurality opinion)). In this case, this court concludes that it was reasonable for Judge Lucas

---

[6] The review of the issuing magistrate's finding of probable cause is very deferential: "Our duty is to ensure that the magistrate judge had a 'substantial basis' for concluding that the affidavit in support of the warrant established probable cause." *United States v. Nolan,* 199 F.3d at 1182 (quoting *Illinois v. Gates,* 462 U.S. 213, 236) (1983)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238.

to "believe that a fair probability existed" that Aguilar - Rodriguez was in possession of documents and other evidence in "attachment B" that could verify the source of his income to pay the numerous loans that were at issue in the investigation and that he continued to reside at the subject property, having been observed there only days before. In addition, "...where continuing criminal activity is suspected, the passage of time is less significant." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998); *United States v. Williams*, 124 F.3d 411, 420 (3rd Cir. 1997). Furthermore, the state judge reasonably could have inferred a nexus between the property and evidence regarding his source of income and documentation regarding the defendant's finances or method of generating cash. A nexus "between the place to be searched and the evidence sought may be established through normal inferences about the location of evidence." *Tisdale,* 248 F.3d at 971 (internal quotations omitted). In this case, because Aguilar - Rodriguez continued to make payments on his loans in cash and was an illegal alien who could not have a legitimate job with an employer, it was reasonable to infer that the sought evidence would be found there because most people store their personal belongings and papers where they reside. In a probable cause review, warrants should not invalidated by examining them in a hypertechnical, rather than a commonsense manner. *United States v. Holliday*, 474 F.2d 320 (10th Cir. 1973); *United States v. Berry*, 423 F.2d 142, 144 (10th Cir. 1970); *United States v. Jordan*, 349 F.2d 107 (6th Cir. 1965).

  With respect to the primary evidence at issue in this case, the court, having concluded that the search was not unconstitutional, agrees that an officer "on the premises pursuant to a valid warrant may ... seize items which immediately appear to be evidence or contraband of a crime." *United States v. Le,* 173 F.3d 1258, 1269 (10th Cir. 1999). Therefore, any firearms and ammunition found during the search at the defendant's place of residence were relevant items of evidence of the crime of an illegal alien in possession of a firearm and ammunition and were properly seized as instrumentalities of a crime.

Because the law enforcement officers here discovered the weapons in plain view while conducting a judge authorized search for the items described in the warrant, the firearms and ammunition evidence should not be suppressed. The evidence showed that the firearms were found in the master bedroom where the defendant was located and the adjacent bathroom, as were the rounds of ammunition, all in places where documents or items listed in "attachment B" could have been found. *United States v. Jones*, 2006 WL 2841139 (S.D. Ala. Sept. 29, 2006) (court upheld entry to the property under the warrant by the *Leon* good faith analysis, and found that the firearm fell within the "plain view" doctrine because the warrant allowed for the seizure of drug related evidence and officers were within the warrant to look in the master bedroom where the guns were found). In another case, *United States v. Antrim*, 389 F.3d 276 (1st Cir. 2004), the defendant attempted to suppress a firearm that was discovered during execution of a search warrant related to heroin distribution that made no mention of any gun. The court rejected the attempt to suppress the use of the gun which was found in a safe in the defendant's residence, stating "[T]he warrant authorized the police to search the entire Antrim apartment for evidence of heroin trafficking. During that lawful search, the police seized the subject weapon in 'plain view.'" *United States v. Antrim*, 389 F.3d at 283; *United States v. Jones*, 187 F.3d 210, 219-221 (1st Cir. 1999); *United States v. Hamie*, 165 F.3d 80, 83 (1st Cir. 1999) (search inside briefcase and box authorized by warrant).

In yet another case substantially on point, *United States v. Gamble*, 388 F.3d 74 (2nd Cir. 2004), the court rejected a motion to suppress related to a search warrant for "drugs and drug paraphernalia" which resulted in the discovery of a gun. The court stated:

> First, the district court properly concluded that the "plain view" exception to the warrant requirement permitted law enforcement officers to seize the ammunition clip found in Gamble's dresser drawer. The "plain view" exception " 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.' " *United States v. Martin,* 157 F.3d 46, 54 (2d

> Cir. 1998) (quoting Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)). The officers in this case had a Fourth Amendment justification for searching the contents of Gamble's drawer because they had a warrant authorizing them to search for and seize cocaine and drug paraphernalia-items that could plausibly be found in a dresser drawer. And there is no dispute that the ammunition clip was found in plain view in the drawer. Finally, the officers had probable cause to believe that the ammunition clip was connected with criminal activity because ammunition is a recognized tool of the drug-dealing trade. *See United States v. Becerra,* 97 F.3d 669, 671-72 (2d Cir. 1996); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir. 1994); *United States v. Cooper,* 19 F.3d 1154, 1163 (7th Cir. 1994).

*United States v. Gamble*, 388 F.3d at 76-77; *see also United States v. Berry*, 423 F.2d 142 (10th Cir. 1970) (argument that the shotgun could not have been seized because it was not listed in the warrant has no merit since it was a contraband article).  This Court adopts such reasoning and concludes that the firearms and ammunition recovered were pursuant to a valid search and should not be suppressed.

## **Conclusion**

Accordingly, for all the reasons set forth above, the court DENIES Defendant's Motion to Suppress (Docket No. 34).

IT IS SO ORDERED this 3rd day of February, 2009.

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE